### LULU HILL, ADM'X, V. LAKE SHORE AND MICHIGAN SOUTHERN RAILWAY CO.

**1. ADOPTION OF SEC. 3365-22, REV. STAT.—LEGISLATIVE INTENT.**

Inasmuch as the doctrine of fellow servants had grown up and been applied in various parts of the United States before the adoption of Sec. 3365-22, Rev. Stat., 87 O. L. 149, providing that "in addition to the liability now existing by law, every person in the employ of such company, actually having power or authority to direct or control any other employee, is not the fellow servant, but superior of such other employee, also that every person in the employ of such company having charge or control of employees in any separate branch or department, shall be held to be the superior and not fellow servant of employees in any other branch or department who have no power to direct or control in the branch or department in which they are employed," the legislature in using the terms "separate branch or department" and providing the rules set forth, must be held to have had in view the doctrine theretofore applied in other states, as the legislature does not undertake to define what shall be deemed a different department or branch of service, but leaves that to be determined by the courts, as we think upon principles analogous to those laid down in cases where the departmental limitation had theretofore been adopted and applied.

**2. RULE IN DETERMINING RELATION OF SUPERIOR AND FELLOW SERVANTS.**

The proper rule in the determination of the relation of superior and fellow servants of a railway company is not by an arbitrary division or holding that because some are employed as engineers, some as firemen, some as brakemen and some as conductors, each of these various lines are different departments, but the true rule is that where there are close and constant associations of employees at their work, bringing them into relation with each other where they may have an influence upon the conduct of one another in their operations and in their work, those so brought together in groups may be said to be in separate departments. In other words each group or each gang, employed in the promotion of a single object, as the running of a train of cars from one end of a section to another, or the management of a certain section of a railroad or any other things which a certain group of men are set to work upon, may be said to be in a separate department.

**3. RULE APPLIED—BRAKEMAN AND ENGINEER FELLOW SERVANTS.**

Under the foregoing rule, an engineer and a brakeman upon the same train in the promotion of a single object, *i e.*, the moving of the train, associated together in such a way as that they will naturally be careful of the train and therefore careful of one another, are fellow servants in the same department.

**4. SCOPE OF THE TERM "DEFECTIVE MACHINERY."**

The term "defective machinery," as used in Sec. 3365-21, Rev. Stat., relating to *prima facie* negligence, is not restricted to defective construction or something absent from the machinery, but applies to machinery which has been allowed to become out of repair, gummed up or so dirty that it will not operate as it is designed to or should operate; but the presumption of negligence from such defects is rebuttable.

5. When Question as to Defect Should go to Jury.

> Where a railroad train started out in good order and the brakes became gum-
> med up, in the ordinary operation of the train, and failed to operate
> properly, the case should go to the jury on the question whether the com-
> pany was negligent or not, but should not be so submitted as to result in a
> shifting of the burden of proof upon the question of the existence of the
> defect.

6. Rule as to Character of Machinery.

> The true rule, within Sec. 3365-21, Rev. Stat., relating to defective machinery
> and *prima facie* negligence, in respect to all machinery, is that it should be
> as perfect as machinery that is in ordinary use and as it could be maintained
> by the exercise of ordinary care.

7. Rule of Employers for Safety of Servants.

> A charge that employers are bound to adopt only such rules as experience
> shows to be reasonably necessary, is too narrow. Employers are bound to
> adopt such rules as persons of ordinary care would discover and must know
> would be necessary for the safety of employees, even though the conditions
> may be new to the employers, and they have had no experience in such cases.

8. Objectionable Charge as to Assumption of Risk.

> A charge which directs the jury that if they find there was no rule provided by
> a railroad company for warning employees on its train when emergency
> brakes were to be applied, yet if the employee knew there was no such rule
> and continued in the service of the company without complaint or o jection
> he assumed the risk incident to such failure to provide rules, is objectionable
> in failing to state the qualification that this would depend upon the knowl-
> edge or lack of knowledge of the employee of the risk or danger incident
> to an operation of the train without such a rule.

Heard on Error.

Parker, J.

This action was brought by Lulu Hill, plaintiff in error here and plaintiff in the court below, as administratrix of the estate of William Hill, to recover from the defendant railroad company on account of the death of William Hill, occurring on the east side of the river in the city of Toledo, on the railroad of the defendant company, and it was charged that his death resulted from the negligence of the railroad company.

It appears that the decedent was a rear brakeman upon a freight train consisting of over seventy cars, which was proceeding westward and approaching the river at Toledo and the junction of the Cincinnati Hamilton & Dayton railroad with the defendant company's railroad; that he was sitting upon the caboose at the rear end of the train; that the engineer of the train was apprised that the semaphore some distance ahead of the train was turned so as to require him to bring his train to a stop and that he did bring his train to a stop; that the stoppage of the train resulted in the deceased being thrown from the train and killed. It is said that the railroad company was negligent in this, that the engineer was negligent in bringing the train to a sudden stop unnecessarily; that he had plenty of time and distance within which to bring the train safely to a stop by doing it gradually by the application of what is called the "service brake," instead of the application that is said to have been made, *i. e.*, the "emergency brake." It is said also that the defendant company was negligent in that it did not provide a rule whereby the engineer should give warning to the trainmen when about to make the application of the brakes, since it is said the application of the service brake is liable to result in the application of an emergency

brake, though not intended, and that the emergency stop is very danger-ous and gives a very hard jolt to the train and is likely to throw one from the train; and it is urged that since this is likely to occur from any stop, the company should provide a rule for a notification by signal from the engine that the brakes are going to be applied, so that the trainmen may be upon their guard against an emergency stop, whether intentionally applied or whether inadvertently applied in the effort to apply the service stop.

It is said that the railroad company was also negligent in that the brakes were out of order or defective; that there is testimony tending to show that the engineer did not purposely apply the emergency stop, but that he intended to apply the service stop, and that on account of the defective condition of the brakes the emergency stop was applied, bringing the train to a sudden stand and throwing the decedent there-from.

The company denied all negligence and averred that the deceased was guilty of contributory negligence.

Upon the issues thus presented, the case was submitted to a jury that returned a verdict in favor of the defendant below. A motion for a new trial was made and overruled and the plaintiff in error complains of various alleged errors, which he says resulted to his prejudice and on account of which he seeks a reversal of the judgment of the court below.

One of the questions which arose upon the trial of the case and which is presented here is, whether the engineer and the deceased brakeman were fellow servants, they both being servants of the defend-ant company upon the same train, it being contended by the railroad company that if there was any negligence other than the negligence of the deceased which resulted in his injury and death, it was the negli-gence of the engineer in needlessly applying the emergency brake, and that the engineer being a fellow servant of the deceased, no right of action accrued on that account.

The court, at the request of the defendant, charged the jury as follows:

" The engineer upon the train was the fellow servant of the deceased, and the deceased assumed the risk of injury resulting from any negligence of the engineer; and the plaintiff cannot recover for any injury resulting to the deceased from the engineer's negligence." To the giving of the above request by the court to the jury the plaintiff by her counsel at the time excepted.

It is contended on behalf of the plaintiff in error that under the statutes, Sec. 3365–21, Rev. Stat., these two servants were in sepa-rate departments of service and that therefore the plaintiff might have recovered on account of the negligence of the engineer and that this instruction, that they were fellow servants, should not have been given.

Section 3365–22, 87 O. L., 149, reads as follows:

" That in all actions against the railroad company for personal injury to, or death resulting from personal injury, of any person, while in the employ of such company, arising from the negligence of such company or any of its officers or employes, it shall be held in addition to the liability now existing by law, that every person in the employ of such company, actually having power or authority to direct or control any other employee of such company, is not the fellow-servant, but superior of such other employe, also that every person in the employ of

such company having charge or control of employees in any separate branch or department, shall be held to be the superior and not fellow servant of employees in any other branch or department who have no power to direct or control in the branch or department in which they are employed."

There was testimony here tending to show that the deceased did not have the power to control or direct in any branch whatever while the engineer did have power to direct and control at least the fireman upon the train. So that the question is directly presented, whether or not the engineer and the rear brakeman, or the deceased, were in separate departments or branches of the service within the purview of this statute.

That an engineer upon one train is in a separate branch or department from a brakeman upon another train has been held in C. H. & D. R. R. Co. v. Margrat, 51 Ohio St., 130 [37 N. E. Rep., 11]. But it is urged by the defendant in error that a very different question is presented here, where both are trainmen upon the same train.

The doctrine upon the subject of what is called the different departments of service amounting to a limitation upon the doctrine of fellow servants had grown up and been applied in various parts of the United States before the adoption of this statute by our legislature and it seems apparent to us that in using the term "separate branch or department," and in providing these rules, the legislature must have had in view the doctrine and rules theretofore applied in other states; for the legislature does not undertake to define what shall be deemed a different department or branch of the service, but leaves that to be determined by the courts, as we think, upon principles analogous to those laid down in the case where this departmental limitation had theretofore been adopted and applied.

I will read from 12 Am. and Eng. Ency. Law (2 ed.), beginning at page 971: "In addition to the liability for the negligence of a servant charged with the performance of the master's positive duties to his servants, there has been laid upon the master, by some courts, a further liability for the negligence of a servant engaged in a department of the same general business which is separate and distinct from the department in which the injured servant is employed."

"This rule may be stated as follows: Where a servant is employed in a department of the general service which is separate and distinct from that of the servant or servants whose negligence caused the injury, the fellow servant rule has no application, and the master is liable."

Among the cases cited as applying the different department limitation upon the doctrine of fellow servants are cases in Illinois (and Illinois seems to be the leading state for that doctrine,) Georgia, Kentucky, Tennessee, Arizona, Missouri, Nebraska, Utah, West Virginia, etc. It is pointed out that the recognition of such limitation is contained in the Mississippi constitution.

It is said that "this doctrine was first judicially recognized in Indiana in the year 1854; but it has since been repudiated in this state. It was adopted in Kentucky, however, in 1865 and was subsequently taken up in other states."

While it may have been subsequently repudiated by the courts in Indiana, it is our recollection from our reading of the Indiana Employ-

ers' Liability Act, that it contains substantially these provisions. However, we are not very clear about that. We had occasion to examine that statute pretty carefully upon another point recently.

"The different department limitation, or the doctrine of consociation, seems to be founded entirely upon the fact that servants in different departments of a large industrial enterprise are unable to exercise any influence upon each other in the encouragement of caution, and, the supposed reason for the rule failing, the courts refuse to apply the fellow servant rule."

It is pointed out that in some states at least, courts have refused to apply the rule to any other class of corporations or employers than railroad companies, and that because such companies especially have various departments.

I read an extract from Coal Creek Mining Co. v. Davis, 18 S. W. Rep., 387 [90 Tenn. 711], and 973 of the Am. and Eng. Ency. Law: "The doctrine rests upon the theory that the vast extent of the business of railway companies has led to the division of their business into separate and distinct departments; that by reason of this division a servant in one branch or department has no sort of association or connection with one in another department; that this absence of association gives such servant no opportunity of observing the character of a servant in another department of labor, and no opportunity to guard against the negligence of such servant. The want of consociation is the idea underlying this limitation."

"Since the want of consociation between the servants is the idea underlying the so-called different department limitation, the application of the doctrine has, in a number of cases, been made to depend more upon the existence or non-existence of a consociation between the employees than upon their employment in the same or separate departments of the master's business."

"According to this view, servants working in the same departments are not fellow servants, within the rule as to the master's liability, unless they directly co-operate with each other in the same line of employment, or by their usual duties are brought into habitual association so that they may exercise a mutual influence upon each other promotive of proper caution."

"And, on the other hand, the doctrine must, according to these cases, be considered to be inapplicable where there is a close association of the injured and negligent servants, even though they may in some sense be employed in different departments."

"The greater number of cases have, however, applied the doctrine without recognizing the distinction."

Then follows note 4, at page 973, with a great many illustrations of the application of the doctrine. Nearly all of them are railroad cases. I shall not take time to read from them, but shall content myself with reading upon the subject from Chicago and Northwestern Railroad Co. v. Moranda, 34 Am. Rep., 168 [93 Ill., 302], an Illinois case. The syllabus reads as follows:

"A fireman on a locomotive engine carelessly threw a lump of coal from the tender, which struck and killed a track repairer servant of the same company, standing near. Held, that the company was liable in damages."

It will be observed that that is directly contrary to the holding of our Supreme Court in Whaalan v. Railway Co., 8 Ohio St., 240, 250. The only difference between the cases that we can see or discover is that in one case the fireman threw out a chunk of coal and in the other case, he threw a stick of wood. The injuries were about the same and appear to have been received under about the same circumstances. But it is apparent that the reason the company was held liable in Illinois and not in Ohio is, that this doctrine of consociation and limitation upon the master and servant was applied in the former state and not in the latter.

I read from note 4 on page 973 of the encyclopedia cited: "On the ground that the injured and the negligent servants were engaged in different departments, and therefore were not fellow servants, the following employees have been held entitled to recover of the common master for the injuries received:

"A foreman in the shipping department of an ice manufactory injured through the negligence of carpenters who removed the cover from a hot water tank under the floor of the factory while placing a guard around the opening."

"A carpenter working on a railroad bridge, injured through the negligence of an engineer."

"An engineer on one train injured through the negligence of an employee in charge of another train."

"A fireman killed by the explosion of a boiler through the carelessness of a boiler manufacturer"

"A teamster hauling ties in the construction of a railroad injured through the negligence of the engine driver of a train on which the workmen rode to dinner."

"An employee of a railroad company, injured while executing his duties as an 'overhauler' of cars, through the negligence of an engineer of a shifting engine employed by the same company."

"A section hand, injured while standing at the side of the track to avoid a passing train, by being struck by a lump of coal cast by the fireman of the train from the tender."

"A section hand injured by a piece of coal falling from the tender of a passing train."

"A track walker on a railroad, injured by the negligence of the engineer or fireman on a passenger train."

"A brakeman injured by the bursting of a boiler owing to the negligence of a foreman at the roundhouse in sending out an unsafe engine."

"A fireman, injured by the negligence of a track repairer in not keeping a bridge or culvert in proper repair."

"A sailor injured by the negligence of other servants of the same master, whose duty it was to see that the rigging and tackle of the vessel should not be set out in bad order."

"A fireman, injured through the negligence of other servants not connected with the running of the train, in negligently placing a mail catcher too near the track."

There are a great many more cases here but in none of them is there any authority for a recovery by a trainman on account of the negligence of another trainman of the same train.

That the authors, or compilers, of this book, regard the Ohio statute as being founded upon this principle, is apparent from what is said

Hill v. Railway Co.

in the note at page 972, *i. e.* : " In Ohio, what seems to be a partial recognition of the different department limitation is to be found in the third section of an act passed April 2, 1890, 87 Ohio Laws, 150, by which it is in effect provided that every person in the employ of a railroad company, having charge of or control of employees in any separate branch or department, shall be held to be a superior and not a fellow-servant of employees in any other branch or department who have any power to direct or control in the branch or department in which they are employed. It has been held that an engineer on one train of a railroad company is in a branch or department of its service separate from that of a brakeman on another train of the same company, within the meaning of the phrase 'separate branch or department,' as it is employed in this statute." Cincinnati, etc. v. Margrat, *supra*, is cited here.

Our statute, it will be observed, as stated in this note, has adopted this principle in a qualified way, that is, it qualifies it by saying that the servant must be one who has employees under him, whereas the general doctrine is, if he is in a distinct department it makes no difference whether he has other employees under him or not. The reason of the rule in so far as the rule is founded on principles of justice would seem to apply to the case of one who had no employees under him as well as to one who has employees under him.

Cincinnati, etc. v. Margrat, *supra*, goes no further than to decide what was then presented to the court for its decision. There is some general language used upon the subject of what is meant by different departments.

The contention upon the part of the railroad company in that case was, that what are different departments is to be determined by the way the railroad company had planned its business and had divided up its work into different departments. The Supreme Court held that that is not true. At page 144, I read from the opinion of the court as follows :

" But the statute, we think, declares that relation to exist, as a matter of law, for the purpose of charging the company, if the engineer was the superior of,—that is, was authorized to command or direct,—any coemploye whatever, and Margrat was without such authority. They must have been in ' separate ' branches or departments of the company's service, for the section so declares. The section, however, makes no attempt to define the terms 'department' and ' branches'; but these terms should not be limited so as to embrace, merely, those large divisions, created for convenience in administering the affairs of the company. On the contrary it is more reasonable to suppose that they relate to those minute ones which concern the daily duties of the employes. Those terms are general and comprehensive ; but as the legislature discloses no purpose, in this connection, to regulate the internal affairs of a railway company, it should not be presumed to refer to divisions of its business made for its own ends; and if not to such divisions, what divisions could it mean but those which divide up the employees while in actual service. The section expressly declares a purpose to enlarge the remedy of the employees for accidents occurring in the course of their employment. This declaration emphasizes the presumption that the terms under consideration should be construed as referring to conditions affecting them, rather than to those which are established by the company for its own purposes."

It refers to conditions affecting them and relates to those minute divisions which concern the daily duties of the employes.

We think that what the court had in mind there was the doctrine, or the principles underlying the doctrine, of consociation. We can not see any reason for undertaking to divide the employees into different departments and saying that because some are employed as engineers, some as firemen, some as brakemen, and some as conductors, that employees engaged in each of these various lines of service are in different departments; but we think there is reason for saying that where there are close and constant associations of employees at their work which bring them into relation with each other where they may have an influence upon the conduct of one another, and naturally would exert influence upon one another in their operations and in their work, that those so brought together in groups may be said to be in separate departments; that is to say, each group and each gang, so to speak, employed in the promotion of a single object, as the running of a train of cars from one end of a section to another, or the maintaining of a certain section of the railroad, or any other thing that a certain group of men are set to work upon and work together at, may be said to be in separate and distinct departments; and, therefore, it seems to us that it should be held and we do hold that an engineer and a brakeman being upon the same train in the promotion of a single object, *i. e.*, the moving the train, associated together in such a way in that enterprise as that they would naturally be careful of the train and therefore careful of one another, are in a single department and not in separate departments. We conclude, therefore, that the charge of the court below upon this subject was correct.

The plaintiff in error complains that the defendant's request No. 7, at page 44 of the record, as to the condition of the brakes, as given to the jury, was wrong. That instruction reads as follows: "Before the jury will be warranted in finding a verdict for the plaintiff because of any failure of the brakes to work properly on account of gummed or dirty conditions of the triple valve or valves or brake cylinder or piston, they must find from a preponderance of the evidence:

"First. That the brakes did fail to work properly by reason of such gummed or dirty condition, and that such failure was the proximate cause of William Hill's death.

"Second. That the defendant railway company had notice or knowledge of such condition, or by the exercise of ordinary care, ought to have had notice or knowledge of such condition.

"Third. That the decedent, William Hill, did not know of such condition and had not equal means of knowing with the railway company."

That was given, and excepted to. It is contended that this is contrary to the express provisions of Sec. 2, of this same act 87 O. L. 149, from which I have read, that is, Sec. 3365-21 which makes the existence and use of defective machinery *prima facie* evidence of negligence upon the part of the company using it.

The defendant undertakes to justify this charge upon the theory or claim that the condition referred to in the instruction was not and could not be considered as a defect, that the statute only applies to defects and not to those conditions of appliances or machinery which may be due to a lack or excess of extraneous matter which may interfere with their perfect operation. It is urged that a machine may not be defect-

ive, may be perfect so far as its construction is concerned, and yet it may become gummed up, or may have too much oil or too little or too much dust, or something may be upon it, or lacking in it in the way of a lubricant, or the contrary, that would interfere with its operation and that such conditions should not be regarded under the statute as defects.

The first clause of the section is as follows :

" It shall be unlawful for any such corporation to knowingly or negligently use or operate any car or locomotive that is defective, or any car or locomotive upon which the machinery or attachments thereto belonging are in *any manner* defective."

It is contended that the term "defective" signifies something lacking, something absent from the appliance or the machinery, but that it cannot be applied to these foreign substances that may accumulate upon the machinery and interfere with its perfect work, or perfect operation.

We are of the opinion that that is too narrow a view of the purpose and meaning of this statute. Recently we had a case [See Hunt v. Caldwell, 11 Circ. Dec., 562] before us in which an alleged defect was in some part of the brake, where a certain nut was too large and the effect was that in twisting up the brake, the chain was apt to catch upon this nut and then as it was drawn tight it would slip off and cause a sudden loosening of the brake and a sudden jerk upon the person operating it which would be likely to throw him to the ground. It was said in the particular instance that we had under consideration that it did so result from this cause. The brake was apparently in all respects perfect except in the matter of having too large a nut upon it which was not something missing from it, it was rather something added to it and yet, we were of the opinion that if the evidence established the fact, that would amount to a defect under this statute.

There was another case that we had before us where the bumpers upon a freight train were perfect ; there was nothing missing from them, but one of them had become partly detached so that it was not only twisted, but somewhat fallen down and the result was that a person trying to make a coupling, got his hand caught in the bumpers and injured. We could not, we believe, apply to that case the definition or rule that there must be something lacking to make the appliance defective ; that is to say, something absent from it; it was simply an apparatus which was out of repair; everything was there that belonged to it, perfect, but it was not properly put together; it was out of repair and it became loose and we concluded that that was a defect within the purview of this statute.

The circuit court of the first circuit had the question under consideration in Crumler, Adm'x, v. Railroad Co., 5 Circ. Dec., 353 [12 R., 164]. The alleged defect in the locomotive in that case was in not having upon it or with it a certain pole to be used in switching cars.

It was held that where a locomotive is not provided with a " pole " for use in switching, and as a consequence a train crew resort to the "flying switch" method, and one of their number, while acting under instructions and not himself negligent, is injured, the absence of the pole will be regarded as the proximate cause of the injury.

After quoting the section of the statute, Judge Smith, delivering the opinion, says: " Under this second section, the question may arise whether the absence of a pole in this case brings the case within the letter or spirit of the section. It having been shown that it is an appli-

ance almost essential for the safety of brakemen in the shifting of such cars from one track to another, and thus dispense with the danger of making a flying switch, and that other companies and this one were accustomed to be supplied with and use them, it would seem that independent of the statute it would be negligence and want of care not to have one on a freight train for this purpose if such work has to be done. But we think it also comes within the spirit at least of this statute, as much as if there had been one, and it was defective, and by reason of defect the brakeman had been injured. In such case if the brakeman had been injured the company would be liable. And so here, if the absence of a necessary appliance was proximately the cause of the injury to the plaintiff, it should also be liable unless he had by his own negligence contributed to the injury."

Other cases, Columbus, H. V. & T. Ry. v. Erick, 51 Ohio St., 146 [37 N. E. Rep., 128], and Pennsylvania Co. v. McCann, 54 Ohio St., 10 [42 N. E. Rep., 768 ; 31 L. R. A., 651], are cases of defective appliances, not like this, and yet with respect to which we think the same technical objection might have been made. In one case the brake worked somewhat too loosely; it either had become worn too smooth or had had too much lubricant; it worked too smoothly and resulted in the one operating it being injured ; that was held to be a defect ; and we think that anything that is allowed to happen to machinery whereby it becomes out of repair and will not operate as it is designed to operate and should operate, should be regarded, within the purview of this statute, as a defect. Of course, the presumed negligence of the company is rebuttable. It is so held by the Supreme Court, and the fact that the train starts out in good order and the brakes are in good order and they suddenly become gummed by reason of the ordinary operation of the train without any fault upon the part of any one, if such should be the case, would be facts to submit to a jury on the question whether the railroad company was in fact negligent in the particular instance ; but we think that the case should not be so submitted to a jury as to result in the shifting of the burden of proof upon the question of the existence of the defect. We believe that the true rule with respect to all machinery, is that it should be as perfect as machinery that is in ordinary use, and as perfect as it could be maintained by the exercise of ordinary care.

We think that notwithstanding the defect may have arisen from a gumming up of the brake, the railroad company is presumed to have been negligent in using it; they are presumed to have had knowledge of its condition and the burden is upon the company to remove that presumption.

Now, we think these are the two principal questions involved in this case and that it is hardly worth while to take the time to discuss other questions presented. We are of the opinion that the court in its charge should not have implied that the deceased was not in the line of his duty when sitting upon the car ; we think that in view of the condition of the pleadings and the evidence and all the circumstances, that should have been omitted from the charge, and yet we are not prepared to say that we would reverse the case on that account. It is said that the court's particular attention was called to it, but we do not discover from the record that that is so, and we assume that it arose from an oversight upon the part of the court as to the real provisions of the rule upon that subject.

Hill v. Railway Co.

Charge No. 12 at page 45 reads as follows: "Employers are not required to form and promulgate rules for the government of their employees that will meet every emergency or contingency that may arise in railroad service. In framing such rules they are bound only to the exercise of ordinary care. They are bound to adopt only such rules as experience shows to be reasonably necessary. And in this case, if the jury find that the defendant had promulgated no rule requiring warning to be given to the deceased that the brakes were to be applied, before they can find that the absence of such rule resulted directly in the death of the deceased, they must first find that the defendant in the failure to publish such a rule was guilty of negligence."

We think that saying they were bound to adopt only such rules as experience shows to be reasonably necessary limits the rules too narrowly; we do not understand that that means the experience of that particular road, but a general experience. We have no fault to find with it on that account. But we think they are bound to adopt such rules as a person of ordinary care would discover and must know would be necessary for the safety of employees, even though it might have been some new thing, as some new employment or some new condition, with respect to which railroads and railroad men had no experience. So, if the matter of using these other brakes was somewhat new and experience had not proved the necessity of such a rule as plaintiff in error thinks should have have been adopted, yet if it would be apparent to a person of ordinary care, skill and observation that such a rule would be necessary, the company would be required to adopt it, nevertheless.

We find no other errors in the record worthy of remark, but on account of the error of the court with respect to this last charge and especially with respect to request No. 7, at page 44, which was given, the judgment of the court of common pleas will be reversed and the cause remanded for a new trial. [The following was delivered later in the term.]

Our attention has been called to the fact that in the opinion of this court, which was handed down last Tuesday, we did not pass distinctly upon certain alleged errors which counsel for plaintiff in error consider important and about which they are desirous of having us express our opinion so that counsel and the court upon a re-trial of the case may be advised of the views of this court.

One of the acts of negligence charged against the railroad company was that it had failed to provide a rule whereby the engineer should warn trainmen of his purpose to apply the steam brakes, the contention of the plaintiff in error here and in the court below being, that there should have been a rule applicable to the applying of the service brake, upon the theory that when an engineer undertakes to apply the service brake he is apt, whether from the character of the machinery, or from his own unskillfulness, to so apply the brakes as to make what is called an emergency brake or an emergency application of the brakes, which brings the train to a very sudden stop and is apt to throw the trainmen off the train and injure them and because of this being likely to happen, there should have been a rule that when he was about to apply the brakes, he should give warning. They say now in argument that they do not claim he should give warning of his purpose to apply the emergency brake. It is apparent that generally, at least, the emergency itself would not admit of his taking time to give warning,

that if he was about to apply it the emergency would probably require that he should do so instantly or as quickly as possible.

Without expressing any opinion as to whether there should be such a rule or not, it appearing under the authorities that that is a question that should be first submitted to the jury, we come to the consideration of certain instructions to the jury given by the trial court upon the subject of this rule which it is claimed by the plaintiff in error should have been omitted. These instructions are numbers 13 and 16 requested by counsel for defendant [the railroad company], and something more upon the subject in the general charge of the court, at pages 46 and 47.'

Number 13, reads as follows : "If the jury find that there was no rule of the defendant providing for warning the deceased that the brake was to be applied; and also find that the deceased knew that there was no such rule, and continued in the service of the defendant as brakeman without complaint or objection, he assumes the risk incident to such failure to provide such rule, and the plaintiff cannot recover in this case on the ground of the failure to provide such rule."

It will be observed that there is nothing said in that instruction about whether the deceased knew of the risk or danger incident to the operation of the train without such a rule and we think that instruction was faulty in that respect, and No. 16 which is substantially the same, except that it adds that if the absence of the rule was the proximate cause of the death of the decedent, the plaintiff cannot recover, has in our opinion, the same fault ; that is to say, it does not contain the qualification providing that the deceased should have known of the absence of the rule and of the risk or danger incident to operating the train without such a rule in order to be bound by the rule of law touching assumption of risks.

The rule upon the subject of the assumption of risks incident to the master's method of carrying on his business is stated in the 14 Ency. of Law (1 ed.), 845, as follows : "Furthermore the servant takes the risk of the master's mode of conducting his business, though a safer one might be followed, if the servant fully knows the risk and continues to work."

There is a considerable discussion of the matter and a citation of authorities and running through most of the authorities is the idea that the servant must not only know of the absence of the rule, if there is no rule, but he must know that it is risky or dangerous to operate under the method by which the master carries on his business.

In Master's Liability for Injuries to Servant, by Bailey, at pages 142 and 146, something is said upon that subject of about the same import. At the head of this chapter beginning at page 142 certain rules are laid down, i. e. : "The master may conduct his business in his own way although another method may be less hazardous. The servant assumes the risk of a more hazardous method if he knows the danger attending it." It is not that he simply knows the method but he must know the danger attending the method. That is discussed at page 145 at some length. I will not take time to read the discussion, but I call attention to the fact that these defects in these special instructions were fully cured, as it seems to us, in the general charge of the court. I will read from page 55. The court says : "During the argument I have been asked to give certain other instructions and so far as I deem them proper and with such modifications as seem to me necessary to make them conform to my

views of the law, I will give them." Then the court quotes from a request to charge : " The defendant was not bound to promulgate or publish a rule providing a warning to be given by the engineer of an intention to make an emergency application of the brakes on the occasion in question," and proceeds to comment upon that as follows :

" The question of whether the defendant was required by law to make rules for the protection of its employees in the matter of giving signals to trainmen of an intention to apply the air brakes depends upon whether such rules were reasonable and practicable and whether they would have the result intended in the actual course of events ; whether they would afford any additional security to the employees and whether, in the exercise of ordinary care, the defendant company was required to make them, and before the argument I gave you one instruction as to the effect of knowledge on the part of the employee, the decedent here, William Hill, of the non-existence of such a rule on the part of the defendant company."

" I have been asked to give you some additional instructions in this regard, and I say to you that even though William Hill knew, or by the exercise of care, ought to have known that no rule for his protection in the regard complained of, had been adopted, yet, unless you find from the evidence that he also knew and understood and realized the danger which might result from the absence of warning or protection in question, he did not assume the hazard or danger resulting or existing by reason of the want of such warning and rule ; but if he knew that there was no rule of the company requiring warning signals by the application of the air-brakes, or that such application of said brakes sometimes resulted in such a sudden stoppage of the train as would be hazardous to a brakeman situated as he was situated, on the top of the car at the time of the occurrence under investigation, if he knew that such sudden stoppage of the train without warning, signal or rule therefor was liable to occur at any time, then he could not wilfully shut his eyes to the danger so caused, but such danger would be one of the hazards assumed by him. Whether he had or had not such knowledge, or whether in the first instance, ordinary care required the making of such a rule, are both questions for you. The law would not require such a rule if it would be impracticable ; if it would not have some tendency to protect the employee, or if the exercise of ordinary care would not require it."

Now, we think that instruction in the general charge upon that subject is correct. Our attention has been called to Van Dusen Gas and Gasoline Engine Co. v. Schelies, 61 Ohio St., 298 [55 N. E. Rep. 998], a case which we have had occasion to examine and apply several times, and it is urged by plaintiff in error that the proper rule applicable to this case is there laid down, that is, that the question whether the servant, knowing of the absence of this rule and knowing of the danger, was guilty of contributory negligence in remaining in the employment of the master, should have been submitted to the jury and that they should not have been instructed that he assumed the risk if he knew of the absence of the rule and knew of the risk ; but we think that VanDusen v. Schelies, *supra*, as well as the cases referred to in the opinion of the court in that case, belong to a different class of cases from this. They belong to a class of cases where the servant is directed and proceeds under a particular order or direction to do a thing and there arises some emergency that does not admit of the servant taking time for thought

and consideration as to whether he shall obey. He proceeds at once in accordance with the direction of the master and the only thing that excuses the servant in taking a hazardous position or doing a hazardous thing that would be otherwise inexcusable and would otherwise defeat his recovery, is the order which is given him and which he proceeds to obey. It does not appear that the case at bar comes within that class of cases. Here the servant was simply proceeding in his usual employment, and in pursuance of any particular order to do any particular thing.

We think the court was right also in not applying the rule as laid down in Chicago & O. Coal & Car Co. v. Norman, 49 Ohio St., 598, [32 N E. Rep. 857]. That is referred to in VanDusen Gas & Gasoline Co. v. Schelies, *supra*, where it is said : " Counsel contend that the case should be ruled by Coal Car Co. v. Norman, 49 Ohio St., 598. This we think is a mistake. It belongs to a different class of cases. It turned on a question of pleading. He averred that the injury to him occurred without fault on his part. It was held that this did not dispense with an averment required in that class of cases, that he was without knowledge of the dangerous character of the place in which he received his injury ; or, having such knowledge, had complained of it to his master. For if he had such knowledge and failed to inform his master, he assumed the risk by continuing in his service without doing so."

We are not aware of any decision holding that, in a case like this, which has no reference to a dangerous place, it is necessary to aver, that the servant had no knowledge of the absence of the rule.

Finding no error in the charge of the court on the subject of the rule we do not care to discuss the case further.